Filed 12/23/25  P. v. Salgado CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LUIS ALBERTO SALGADO,<br><br>  Defendant and Appellant. | F088130<br><br>(Super. Ct. No. BF121813A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen, Amanda D. Cary, Kari Ricci Mueller, and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant Luis Alberto Salgado, who was originally sentenced in 2009 for crimes he committed in 2007, was resentenced in 2024 following recall and resentencing under Penal Code section 1172.75.  (Undesignated statutory references are to the Penal Code.) Defendant's total determinate term was reduced from five years to three years, but the trial court declined his request to strike or reduce the indeterminate firearm enhancement term of 25 years to life imposed under section 12022.53, subdivision (d).

In this appeal, defendant claims the trial court erred when it reimposed upper term sentences without complying with the factfinding requirements under section 1170, subdivision (b), as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), and abused its discretion by failing to consider the lower term presumption under section 1170, subdivision (b)(6).[1]  Regarding the interplay of section 1170, subdivision (b)(1)–(3), and section 1172.75, subdivision (d)(4), defendant argues this court should follow *Gonzalez* and reject *Brannon-Thompson* and *Mathis*.  (*People v. Mathis* (2025) 111 Cal.App.5th 359, 373–374, review granted Aug. 13, 2025, S291628 (*Mathis*); *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 330–331 (*Gonzalez*); *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466–467 (*Brannon-Thompson*).)[2]  If this court finds defendant's claims forfeited for failure to object, he argues defense counsel rendered ineffective assistance of counsel (IAC).  Defendant also claims the trial court abused its discretion when it denied his request for relief from the 25-years-to-life firearm enhancement under section 1385 as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81), and he claims entitlement to vacatur of the section

---

[1] The legislative findings and declarations set forth in section 1170, subdivision (a)(1) and (2), were amended by Senate Bill No. 551 (2025–2026 Reg. Sess.), effective January 1, 2026.  (Stats. 2025, ch. 225, § 2.)

[2] Briefing in *Mathis* is deferred pending a decision in *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903.

1202.4 restitution fine under section 1465.9, subdivision (d), as amended by Assembly Bill No. 1186 (2023–2024 Reg. Sess.) (Assembly Bill No. 1186), effective January 1, 2025.[3]

The People dispute any entitlement to relief.

As explained below, we conclude defendant forfeited his claims that the trial court violated his rights under section 1170, subdivision (b), and the Sixth Amendment when it reimposed upper term sentences, and that the court failed to give due consideration to the lower term presumption based on age and evidence of childhood trauma. The record reflects defense counsel, who proposed two sentencing options, both of which included upper term sentences, made a reasonable tactical decision to focus on seeking a reduction of the 25-years-to-life firearm enhancement to either 10 years or 20 years at resentencing. Additionally, we are persuaded by *Mathis* and *Brannon-Thompson* that subdivision (d)(4) of section 1170 permits trial courts to reimpose an upper term sentence without complying with section 1170, subdivision (b), as amended by Senate Bill No. 567, if the defendant was previously sentenced to the upper term. (*Mathis*, *supra*, 111 Cal.App.5th at pp. 373–374, review granted; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) As explained in *Mathis*, this legislative exception to the application of section 1170, subdivision (b), as amended does not implicate the Sixth Amendment because defendant's upper term sentences were lawful when originally imposed (*Mathis*, at pp. 373–374), and the Legislature may, as it has done in subdivision (d)(4) of section 1172.75, " 'write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all,' and it may 'disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated' " (*Mathis*, at p. 374, quoting *People v. Padilla* (2022) 13 Cal.5th 152, 162

---

[3] Although not relevant to the claims at issue in this appeal, section 1202.4 was amended by Assembly Bill No. 1213 (2025–2026 Reg. Sess.), effective January 1, 2026. (Stats. 2025, ch. 184, § 3.)

(*Padilla*)).  Therefore, defense counsel's failure to object under section 1170 did not constitute IAC.

We also conclude defendant forfeited his claim that the trial court erred under section 1385, and defense counsel was not ineffective for failing to object.  However, we reject the People's argument that because the 10-year clock under section 1465.9, subdivision (d), restarted at resentencing, defendant is not entitled to vacatur of the $200 restitution fine.  The People's position is not supported by the plain language of the statute and it is contrary to legislative intent.  The People also fail to cite any legal authority or develop any substantive argument supporting the view that the 10-year timeline for vacatur of the judgment imposing the restitution fine starts over by virtue of defendant's resentencing.

Accordingly, we vacate the portion of defendant's judgment imposing the $200 restitution fine under section 1202.4 and otherwise affirm the judgment.

## PROCEDURAL BACKGROUND

In 2007, defendant and two other men were involved in robbing a victim at gunpoint.[4]  Shortly thereafter, they attempted to rob a second victim, who survived being shot twice in the head but was initially comatose.  Defendant was subsequently convicted by jury in 2009 of attempted manslaughter (§§ 192, subd. (a), 664; count 1), attempted second degree robbery (§§ 212.5, subd. (c), 664; count 2), assault with a firearm (§ 245, subd. (a)(2); count 3), unlawful possession of a firearm (former § 12021, subd. (a)(1); count 4), and second degree robbery (§ 212.5, subd. (c); count 5).  The jury also found the following sentence enhancement allegations true:  personal use or discharge of a firearm (§ 12022.53, subds. (b)–(d); counts 1 & 2); personal infliction of great bodily injury (GBI) (§ 12022.7, subds. (a)–(b); counts 2 & 3); and personal use of a firearm in

---

[4] We take judicial notice of our nonpublished opinion in *People v. Salgado* (Nov. 30, 2010, F058076) (*Salgado*).  (Evid. Code, §§ 452, subd. (d), 459.)

the commission of a felony (§ 12022.5, former subd. (a)(1); count 3). In a bifurcated proceeding, the court found that defendant served a prior prison term. (§ 667.5, former subd. (b).)

At the 2009 sentencing hearing, the trial court found three aggravating sentencing factors and no mitigating factors.[5] On count 2, attempted robbery, defendant was sentenced to the upper term of three years with an additional 25 years to life for the firearm enhancement, and a one-year term for the prior prison term enhancement; and on count 5, robbery, defendant was sentenced to a consecutive one-year term, for a total determinate term of five years and an indeterminate term of 25 years to life. Sentences on the other three counts were imposed and stayed under section 654.

In 2010, judgment was affirmed on direct appeal in *Salgado*, *supra*, F058076.

In late 2023, the matter came before the trial court for recall and resentencing under section 1172.75. In May 2024, following the appointment of counsel and briefing by the parties, the trial court made findings on circumstances in aggravation and mitigation,[6] struck the prior prison term enhancement, and imposed the middle term of three years for robbery in count 5, to run concurrently with defendant's three-year upper term sentence for attempted robbery in count 2. These changes resulted in the reduction

---

[5] The trial court found defendant's prior convictions were numerous, he was on parole when he committed the crimes, and his prior performance on deferred entry of judgment and probation was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(2), (4), (5).)

[6] The trial court restated the three aggravating factors found at the original sentencing hearing and noted the crimes involved multiple victims. (*People v. Dorado* (2024) 105 Cal.App.5th 717, 736, quoting *People v. Calhoun* (2007) 40 Cal.4th 398, 408 [" 'There is no persuasive reason why the trial court should not be allowed to consider the fact of multiple victims as a basis for imposing either the upper term or a consecutive sentence, *although it cannot do both*. ([Cal. Rules of Court, r]ule 4.425(b)(1).)' "].) In mitigation, the court found defendant was under the age of 26 and claimed childhood trauma, and multiple enhancements were alleged. (Cal. Rules of Court, rule 4.423(b)(4), (6), (11).)

of defendant's five-year determinate term to three years, but the court did not otherwise alter defendant's sentence.

Defendant filed a timely notice of appeal and also filed a petition seeking recall and resentencing under section 1172.1. The trial court treated the petition as a motion for reconsideration of the resentencing under section 1172.75 and denied it.

As previously set forth, in this appeal, defendant challenges the imposition of upper term sentences in contravention of the factfinding requirements in section 1170, subdivision (b)(1) through (3)[7]; the failure to give due consideration to the lower term presumption under section 1170, subdivision (b)(6); and the denial of his request to reduce his firearm enhancement to a determinate term of 10 or 20 years under section 1385; and he claims entitlement to vacatur of the $200 restitution fine under section 1465.9, subdivision (d). If we find his claims of error under section 1170 forfeited for failure to object, he argues IAC. The People dispute any entitlement to relief.

We find defendant forfeited his claims of error under sections 1170 and 1385, and defense counsel did not render IAC. We vacate the portion of the judgment imposing a $200 restitution fine pursuant to section 1202.4 and otherwise affirm the judgment.

## DISCUSSION

### I. Claims of Determinate Sentencing Error Under Section 1170

#### A. Procedural Background

In late 2023, the trial court initiated recall and resentencing proceedings pursuant to section 1172.75. As stated, in 2009, the unstayed portion of defendant's sentence was comprised of the upper three-year term for attempted second degree robbery (count 2), one-third of the three-year middle term for second degree robbery (count 5), and one year for the prior prison term, for a total determinate term of five years; and an indeterminate

---

[7] The trial court reimposed the upper terms in counts 1 through 4, and stayed the sentences in counts 1, 3, and 4 under section 654.

term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). At the resentencing hearing, defense counsel's focus was the reduction of the indeterminate enhancement term to a determinate term of 10 or 20 years under section 12022.53, subdivision (b) or (c). To that end, defense counsel presented two sentencing options to the court. The first option consisted of the upper term of five years six months for attempted involuntary manslaughter (count 1) with a 10-year firearm enhancement under section 12022.53, subdivision (b), and one-third of the two-year middle term for attempted robbery (count 2) with a five-year enhancement under section 12022.7, subdivision (b), for a total determinate term of 21 years two months. The second option consisted of the upper term of three years for attempted robbery (count 2) with a 20-year term for the firearm enhancement under section 12022.53, subdivision (c), and one-third of the three-year middle term for robbery (count 5), for a total determinate term of 24 years.

At resentencing, the trial court declined to reduce the firearm enhancement from 25 years to life to either 10 years or 20 years. The court struck the one-year prior prison term enhancement and imposed a concurrent middle term of three years for robbery, which reduced defendant's total determinate sentence from five years to three years. Otherwise, the court did not make any changes to defendant's sentence.

## B. Imposition of Upper Terms in Counts 1 Through 4

### 1. Senate Bill No. 567's Amendment of Section 1170

Effective January 1, 2022, Senate Bill No. 567 amended section 1170. Relevant to defendant's claim of error in imposing upper term sentences, subdivision (b)(1) through (3) of section 1170, provides:

> "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

"(2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

"(3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions." (§ 1170, subd. (b)(1)–(3).)

As the California Supreme Court subsequently explained, "Under the Fifth and Sixth Amendments to the United States Constitution, 'any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' " (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078 (*Wiley*), quoting *Cunningham v. California* (2007) 549 U.S. 270, 281 & citing *Erlinger v. United States* (2024) 602 U.S. 821, 830–832; accord, *People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).) Thus, under section 1170 as amended, "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm. The proper procedure for adjudicating such aggravating facts is as follows: Defendants may assert the right to a jury trial, may waive jury in favor of a court trial, or may waive trial altogether. Subject to the standard rules of evidence both parties may stipulate to the admission of probation reports or other evidence bearing on a defendant's social and educational history, as well as other information relevant to sentencing, including criminal history. The burden is on

8.

the People to prove beyond a reasonable doubt the facts relied on to justify an upper term sentence. If those facts are properly proven, the court may take them into account and exercise its discretion under section 1170[, subdivision ](b) to determine what sentence to impose, keeping in mind the statutory limits on upward departures from the midterm and the requirement for stating its reasons on the record. (§ 1170[, subd. ](b)(2), (5).)" (*Wiley*, *supra*, 17 Cal.5th at p. 1086.)

### 2. Recall and Resentencing Under Section 1172.75

Defendant's judgment became final in 2010, long before section 1170 was amended by Senate Bill No. 567. However, in 2019, "in an effort to reduce the societal and fiscal burdens of incarceration, the Legislature passed Senate Bill No. 136 (2019–2020 Reg. Sess.) . . . , which amended section 667.5[, subdivision ](b) to eliminate prior-prison-term enhancements for all prior crimes except for 'sexually violent offense[s] as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.' (Stats. 2019, ch. 590, § 1.) In 2021, Senate Bill No. 483 (2021–2022 Reg. Sess.) made this change retroactive. It enacted . . . section 1171.1 (Stats. 2021, ch. 728, §§ 1, 3), later renumbered without substantive change as . . . section 1172.75 . . . (Stats. 2022, ch. 58, § 12), which declares: 'Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid.' (§ 1172.75, subd. (a).)" (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1054 (*Rhodius*).)

"A defendant serving a term for a judgment that includes a now-invalid enhancement is entitled to resentencing. (§ 1172.75, subds. (a), (c).) To facilitate the process, the statute directs California's Department of Corrections and Rehabilitation . . . to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a).' (*Id*., subd. (b).) Upon receiving that information, the sentencing court must 'review the judgment and verify that the

9.

current judgment includes a sentencing enhancement described in subdivision (a).' (*Id.*, subd. (c).) 'If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant.' (*Ibid.*) The statute provides separate deadlines for identification, review, and resentencing of 'individuals . . . currently serving a sentence based on the enhancement' and 'all other individuals.' (*Id.*, subds. (b)(1), (2), (c)(1), (2).)" (*Rhodius*, *supra*, 17 Cal.5th at p. 1055.)

"Section 1172.75, subdivision (d) sets forth detailed instructions for resentencing once a sentence has been recalled." (*Rhodius*, *supra*, 17 Cal.5th at p. 1055.) Subdivision (d) of section 1172.75 provides, in relevant part:

> "(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed.

> "(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.

> "(3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.

> "(4) *Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(1)–(4), italics added.)

10.

### 3. Forfeiture Doctrine

Defendant was resentenced more than two years after the effective dates of Senate Bill No. 567 and Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill No. 483), and we must decide whether he forfeited his claim of error in imposing upper term sentences by failing to object. Defendant concedes he failed to object but requests that we exercise our discretion to consider his claim notwithstanding the absence of objection. If we decline to do so, he claims IAC.

"The forfeiture doctrine is a 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not—raised in the trial court. [Citation.]' [Citations.] Strong policy reasons support this rule[, because, as previously stated,] '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' [Citation.] ' " ' "The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " ' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881 (*Sheena K.*).) " '[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*Sheena K.*, at p. 888, fn. 7.)

At the time of defendant's resentencing, section 1170 as amended by Senate Bill No. 567 and section 1172.75 had been in effect for more than two years, as stated. Although the California Supreme Court had not yet decided *Lynch* and *Wiley*, as defendant notes, review was granted in *Lynch* to determine when remand for resentencing was required in the context of retroactive application of Senate Bill No. 567 (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743), and review was granted in *Wiley* to address the scope

of the prior conviction exception (*Wiley*, *supra*, 17 Cal.5th at p. 1076). Neither decision supports excusing defendant's failure to object to the trial court's engagement in factfinding and imposition of the upper terms and he does not contend otherwise. Although there were splits of authority and issues pending resolution by the California Supreme Court, at the time of defendant's resentencing in May 2024, the trial court and the parties to this case were well aware of the limitation to the trial court's authority to select the upper term based on its own factfinding. (E.g., *People v. Falcon* (2023) 92 Cal.App.5th 911, 918 ["While courts uniformly agree Senate Bill [No.] 567 applies retroactively to nonfinal cases, the Courts of Appeal are currently fractured regarding how to assess the need for resentencing in the context of upper term sentences imposed under section 1170, former subdivision (b)."], disapproved on another ground by *Lynch*, *supra*, 16 Cal.5th at pp. 751, 768–769; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 & fn. 10.) Had defendant believed it was error for the court to impose upper terms in light of section 1170 as amended, he could have and should have objected. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208 ["[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct."].) He did not do so and, therefore, he forfeited his claim of error.

### 4. IAC

#### a. Legal Standard

In claiming counsel's failure to object constituted IAC on direct appeal, defendant " 'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 736, quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) " '[T]he standard for judging counsel's representation is a most deferential one.' (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).) We 'must indulge a "strong presumption" that counsel's

conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' (*Bell v. Cone* (2002) 535 U.S. 685, 702.) 'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.' (*Richter*, at p. 105.)" (*In re Long* (2020) 10 Cal.5th 764, 773 (*Long*).)

Therefore, "defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*), quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Strickland*, *supra*, 466 U.S. at p. 690; accord, *People v. Barrett* (2012) 54 Cal.4th 1081, 1105.) " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 985, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)

### b. No Error

In this case, defendant's aggregate determinate sentence was only five years, and the difference between the upper term and the middle term for attempted second degree robbery was only one year. (*People v. Neely* (2009) 176 Cal.App.4th 787, 797 [triad is 16 months, two years, or three years].) At resentencing, counsel understandably focused on trying to persuade the trial court to reduce the firearm enhancement term from 25 years to life to a determinate term of 10 or 20 years, and she identified two sentencing options, both of which retained upper term sentences. The decision to focus on a sentencing change that would be of the most benefit to defendant by eliminating his indeterminate term was both inherently tactical and rational. (*Mickel*, *supra*, 2 Cal.5th at p. 198.)

13.

Further, counsel may well have concluded, as do we, that the trial court did not err because, under its plain language, section 1172.75, subdivision (d)(4), is a legislative exception to the factfinding requirements of section 1170 as amended by Senate Bill No. 567, limited to those defendants who were originally sentenced to upper terms. (*Mathis*, *supra*, 111 Cal.App.5th at pp. 373–374, review granted; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.)

#### i.      Principles of Statutory Interpretation

" 'The proper interpretation of a statute is a question of law we review de novo.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1032; accord, *People v. Lewis* (2021) 11 Cal.5th 952, 961.)  " ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning. . . .  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 989–990, quoting *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617; accord, *Rhodius*, *supra*, 17 Cal.5th at pp. 1057–1058.)

#### ii.      Summary of Appellate Authority

In *Brannon-Thompson*, the first case to address this issue, the defendant was resentenced under section 1172.75 and challenged the trial court's imposition of the upper term based on aggravating factors not found true beyond a reasonable doubt in accordance with section 1170 as amended by Senate Bill No. 567.  (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 458.)  The appellate court concluded the defendant forfeited

14.

his claim because he failed to object in the trial court and counsel's failure to object was not IAC because, based on the plain language of the statute, "it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing.  Section 1172.75, subdivision (d)(4) is, therefore, an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Id.* at pp. 466–467; see *id.* at pp. 464, 466–467.)

Subsequently, the Court of Appeal in *Gonzalez* disagreed with *Brannon-Thompson*. (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 330.)  The court agreed *Brannon-Thompson*'s interpretation was reasonable but determined "another reasonable interpretation of section 1172.75, subdivision (d)(4) would simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term.  Under such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Id.* at p. 329.)  *Gonzalez* was concerned that "reading an exemption into section 1172.75, subdivision (d)(4), . . . and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*." (*Id.* at p. 330, citing *Lynch*, *supra*, 16 Cal.5th at p. 768.)

The court concluded, "Under the doctrine of constitutional avoidance, a statute should not be construed to violate the Constitution if any other construction is viable. (*People v. Garcia* (2017) 2 Cal.5th 792, 804.)  With that in mind, the statutory interpretation for section 1172.75, subdivision (d)(4), which simply *restricts the scope of defendants eligible to receive the upper term*, allows us to read the statute in a manner that is internally consistent and avoids running afoul of the Sixth Amendment.  Under

15.

such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact.  In other words, the same requirements for imposing an upper term under section 1170, subdivision (b)(2) would apply, thus eliminating any potential conflict between the statutes.  As a result, section 1172.75, subdivision (d)(2) and (4) would also not conflict, and the statutory scheme would not be construed to violate the Sixth Amendment." (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 330.)

Thereafter, the Court of Appeal in *Mathis* disagreed with *Gonzalez* and followed *Brannon-Thompson*.  (*Mathis*, *supra*, 111 Cal.App.5th at p. 373, review granted.)  The court explained, "[S]ection 1172.75 is not ambiguous because more specific legislative enactments control over general ones.  (See *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 68–69.)  And here, section 1172.75, subdivision (d)(2), addresses the general topic of changes in law, whereas subdivision (d)(4) of that statute more specifically deals with the new factfinding requirement, making clear that it does *not* apply where 'the court originally imposed the upper term.' (See *Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 467 ['Section 1172.75, subdivision (d)(4) is . . . an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing.'].)  [¶]  To be sure, absent language to the contrary in section 1172.75, section 1170, subdivision (b)'s amended sentencing scheme would apply to Mathis's resentencing because we presume that the Legislature intends ameliorative changes in sentencing law to apply in all cases that are nonfinal, including cases which became nonfinal due to resentencing.  (See [*Padilla*, *supra*,] 13 Cal.5th [at pp.] 162–163 . . . .)  But the Legislature is also free to 'write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all,' and it may 'disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated.' (*Id.*

16.

at p. 162; see [*People v.*] *Terwilligar*[ (2025)] 109 Cal.App.5th [585,] 602.) Section 1172.75, subdivision (d)(4), does exactly that. It expresses the Legislature's intent that the new, heightened factfinding requirements for aggravating factors do not apply where the defendant was originally, lawfully sentenced to an upper term. (See *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.)" (*Id.* at p. 374.)

The *Mathis* court disagreed that this interpretation implicates the Sixth Amendment because the defendant's upper term sentence comported with the law then in effect. (*Mathis*, *supra*, 111 Cal.App.5th at p. 373, review granted.) The court explained, "When Mathis was sentenced, in 2017, his sentence was imposed pursuant to the version of section 1170, subdivision (b), that granted the trial court broad discretion to select any of the three applicable prison terms." (*Ibid.*) At that time, "there was no requirement for the judge to find a particular fact to justify imposition of the upper term" (*ibid.*, citing *Lynch*, *supra*, 16 Cal.5th at p. 747), and "selection of an upper term . . . did not run afoul of the Sixth Amendment" (*Mathis*, at p. 373, citing *Lynch*, at pp. 747–748 & *Cunningham v. California*, *supra*, 549 U.S. at p. 294). "Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4)." (*Mathis*, at pp. 373–374, citing *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.)

### iii. Section 1172.75, Subdivision (d)(4), Creates an Exception to Requirements for Imposing Upper Terms Under Section 1170, Subdivision (b)

We agree with the conclusion reached by *Brannon-Thompson* and *Mathis*.[8] "In interpreting a statute, we generally 'accord words their usual, ordinary, and common

---

[8] Although the decision is not yet final, another Court of Appeal recently followed the *Mathis*/*Brannon-Thompson* line of cases. (*People v. Dozier* (Dec. 2, 2025, B336625) [2025 Cal.App. Lexis 786].)

sense meaning.' " (*People v. Raybon* (2021) 11 Cal.5th 1056, 1066.)  "Absent 'a specific statutory definition of [a term,] we may "look to [its] plain meaning . . . as understood by the ordinary person, which would typically be a dictionary definition." ' " (*People v. Walker*, *supra*, 16 Cal.5th at p. 1035, quoting *In re M.A.* (2022) 83 Cal.App.5th 143, 150; see § 7, subd. (c) ["Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and any others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to that peculiar and appropriate meaning"].)  "The word 'unless' when used as a conjunction means 'except on the condition that.' " (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888, quoting Webster's 9th New Collegiate Dict. (1988) p. 1292; accord, *Estate of Smith* (1901) 131 Cal. 433, 434 [" 'unless' . . . means the same as 'except' "]; *Baggett v. Housing Authority* (1987) 195 Cal.App.3d 383, 389 ["the word 'unless' means an exception"]; *People v. Millsap* (1927) 85 Cal.App. 732, 744 ["The word 'unless' is the equivalent of 'except' "]; see Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/unless> [as of Dec. 23, 2025], archived at <https://perma.cc/6V56-HTD3>.)

Section 1172.75, subdivision (d)(2), requires the court to "apply the sentencing rules of the Judicial Council and . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  This general provision, however, is qualified by the more specific exclusion in section 1172.75, subdivision (d)(4), which provides, "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (Italics added.)

Senate Bills Nos. 567 and 483 were enacted during the same legislative session, and Senate Bill No. 483 was amended to add subdivision (d) to section 1172.75 on July 15, 2021. (Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended Jul. 15, 2021.) "[T]he Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' " (*People v. Frahs* (2020) 9 Cal.5th 618, 634), and the author's comments preceding the amendment expressly recognize the presumption of retroactive application of law reducing punishment (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021–2022 Reg. Sess.) Jul. 13, 2021, p. 3 [proposed amendment]).

Absent the amendment of Senate Bill No. 483 to include subdivision (d)(4) to section 1172.75 (former § 1171.1), imposition of the upper term at resentencing would have required compliance with section 1170, subdivision (b), as amended by Senate Bill No. 567. (*Mathis*, *supra*, 111 Cal.App.5th at p. 374, review granted; § 1172.75, subd. (d)(2); see *Padilla*, *supra*, 13 Cal.5th at pp. 161–162 [vacatur of sentence renders judgment nonfinal for purposes of presumption under *In re Estrada* (1965) 63 Cal.2d 740, 744–745 (*Estrada*)].) Alternatively, had the Legislature intended to *restrict* imposition of the upper term upon resentencing to only those defendants who had previously been sentenced to an upper term, as *Gonzalez* posits (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 329–330), it could have simply and straightforwardly restricted upper term eligibility at resentencing to that specific group of defendants (see *Rhodius*, *supra*, 17 Cal.5th at p. 1062 ["But if it was the Legislature's intent to defer the invalidation and reexamination of stayed section 667.5[, subdivision ](b) enhancements, *we expect that it would have put the matter more plainly*." (italics added)].) Inclusion of language mirroring the factfinding requirements under section 1170, subdivision (b) as amended would not have been necessary. (*In re C.H.* (2011) 53 Cal.4th 94, 103 ["It is a settled principle of statutory construction that courts should 'strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous,' " and "[w]e harmonize statutory provisions, if possible, giving each

19.

provision full effect."]; accord, *People v. Leiva* (2013) 56 Cal.4th 498, 506.) Instead of either remaining silent and allowing the application of section 1170 as amended by Senate Bill No. 567 to defendants being resentenced under Senate Bill No. 483 or limiting the group of defendants eligible for upper terms during resentencing to those defendants who received upper terms when originally sentenced, the Legislature, in clear terms, created an exception exempting defendants originally sentenced to upper terms from the application of section 1170 as amended by Senate Bill No. 567.

"The Legislature may write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all. This includes the prerogative to disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated." (*Padilla*, *supra*, 13 Cal.5th at p. 162.) Case law does "not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the [legislative body] demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*People v. Conley* (2016) 63 Cal.4th 646, 656–657.)

The Legislature has done so here in excluding those defendants who were sentenced to upper terms from the retroactive application of section 1170 as amended by Senate Bill No. 567. (*Mathis*, *supra*, 111 Cal.App.5th at p. 374, review granted; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) Because defendant's upper term sentences were lawfully imposed in 2009 under section 1170 as it then provided, the Sixth Amendment is not implicated, as *Mathis* explained. (*Mathis*, at p. 373, citing *Lynch*, *supra*, 16 Cal.5th at pp. 747–748 & *Cunningham v. California*, *supra*, 549 U.S. at p. 294.)

Defendant points out that the legislative history for Senate Bill No. 483 does not reveal the intent underlying the addition of subdivision (d)(4) to section 1172.75. We agree but this silence does not negate the plain language of the statute. (*People v. Montiel*

20.

(2019) 35 Cal.App.5th 312, 323–324.) "Courts are not permitted to 'speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716.) ' "The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' " ' (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266.) If the statutory language is clear and unambiguous, we presume the Legislature meant what it said and do not look behind the face of the statute to seek out some unexpressed intent. (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.)" (*Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 753–754.)

Finally, defendant argues that where there are two reasonable interpretations, we must apply the rule of lenity and resolve the matter in his favor. However, the rule of lenity " ' "generally requires that '*ambiguity* in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." ' " (*People v. Reynoza*, *supra*, 15 Cal.5th at p. 1012, italics added; accord, *People v. Braden* (2023) 14 Cal.5th 791, 824.) It applies " ' "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." ' [Citation.] In other words, 'the rule of lenity is a tie-breaking principle, of relevance when " 'two reasonable interpretations of the same provision stand in relative equipoise . . . .' " ' " (*People v. Braden*, at p. 824.) In this instance, for the reasons stated, we are not persuaded that *Gonzalez*'s interpretation is reasonable given the plain statutory language and stands in equipoise with the interpretation advanced in *Brannon-Thompson* and *Mathis*.

For the foregoing reasons, we conclude the trial court did not err when it imposed upper term sentences at the resentencing hearing and because there was no error, defense counsel's failure to object did not constitute IAC.[9]

## C.      Lower Term Eligibility Under Section 1170

### 1.      Section 1170, Subdivision (b)(6)

Next, defendant seeks remand for resentencing based on the argument the record is ambiguous regarding whether the trial court was aware of its obligation to consider the lower term under section 1170, subdivision (b)(6)–(7), which provides,

> "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term *if any of the following was a contributing factor in the commission of the offense*:

> "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

> "(B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

> "(C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking.

---

[9] To the extent defendant is arguing that the trial court's engagement in factfinding at the resentencing hearing triggered the need to comply with section 1170, subdivision (b), as amended to avoid violating the Sixth Amendment, we disagree. The court was entitled to reimpose upper terms without complying with section 1170, subdivision (b), as amended because of the legislative exception set forth in section 1172.75, subdivision (d)(4). (*Mathis*, *supra*, 111 Cal.App.5th at pp. 373–374, review granted; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) Defendant does not explain how the court's decision to explain its reasoning in terms of what it found to be factors in aggravation deprived it of the sentencing discretion it was afforded by virtue of subdivision (d)(4) of section 1172.75.

"(7) Paragraph (6) does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present."  (§ 1170, subd. (b)(6)–(7), italics added.)

### 2. Forfeiture and IAC

Defendant did not object, as he recognizes, and he claims IAC if we find his claim forfeited.  As previously discussed, defense counsel sought to have defendant's indeterminate firearm enhancement term reduced to one of two significantly more favorable terms, and counsel provided the trial court with two sentencing options, both of which included upper term sentences.  By failing to raise the claim of error now advanced on appeal, despite the opportunity to do so, this claim is forfeited.  (*Sheena K.*, *supra*, 40 Cal.4th at pp. 880–881.)

Moreover, counsel did not render IAC.  First, counsel made a reasonable tactical decision to focus on seeking reduction of the indeterminate firearm enhancement term rather than focusing on the determinate terms, which would not have significantly reduced defendant's sentence.  (*Mickel*, *supra*, 2 Cal.5th at p. 198.)  Counsel may well have determined that because the greatest benefit to defendant was the reduction of the indeterminate term, drawing the court's focus away from the firearm enhancement and toward consideration of selecting the lower term would not have benefitted defendant.  (*Ibid.*)  Put differently, counsel wanted the court to reduce the firearm enhancement from 25 years to life to 10 or 20 years, which would have materially changed defendant's sentence.  It was reasonable for counsel to conclude that suggesting imposition of the lower term in lieu of the upper term as a sentencing option, resulting in a sentence reduction of only one year eight months, would have distracted from rather than served defendant's interest in elimination of the indeterminate term.  (*Ibid.*)

Second, we have already determined that section 1172.75, subdivision (d)(4), exempts upper term defendants from the factfinding requirements under section 1170, subdivision (b), as amended by Senate Bill No. 567, and the trial court here reimposed the upper terms after considering aggravating and mitigating factors.  The court expressly

23.

acknowledged defendant's youth and claim of childhood trauma, and nothing in the record suggests either contributed to the commission of the crimes. (See *People v. Knowles* (2024) 105 Cal.App.5th 757, 765 ["The mere fact a defendant is young or has suffered past trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the low term presumption to apply."], quoting § 1170, subd. (b)(6) & citing *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991.) Given the absence of any discernible error, no duty to object arose.[10]

### 3.    *Salazar/Gutierrez* Remand Inapplicable

Defendant also relies on *Salazar* for the following proposition: " ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." [Citation.] In such circumstances, [courts] have held that the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 424 (*Salazar*); accord, *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) While this is a correct statement of the law, nothing in the record indicates the trial court misunderstood the scope of its sentencing discretion.

Therefore, the usual principles of appellate review apply: "Absent evidence to the contrary, we presume that the trial court knew the law and followed it" (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*)), and "we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to

---

[10] The parties do not address if, or to what extent, section 1172.75, subdivision (d)(4), affects section 1170, subdivision (b)(6), and we express no view on the matter.

24.

support it on matters as to which the record is silent, and error must be affirmatively shown" ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666). No error has been shown and nothing in the record supports entitlement to remand under the *Salazar/Gutierrez* rule.

## II.     Denial of Relief Under Section 1385

### A.     Section 1385 as Amended by Senate Bill No. 81

Next, defendant claims the trial court misunderstood the law and, therefore, the court's failure to either strike or reduce his firearm enhancement under section 1385 was an abuse of discretion. As amended by Senate Bill No. 81, section 1385, subdivisions (a) through (c)(2), provides, with the relevant portions italicized:

> "(a) The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter. A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading.

> "(b)(1) If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a).

> "(2) This subdivision does not authorize the court to strike the additional punishment for any enhancement that cannot be stricken or dismissed pursuant to subdivision (a).

> "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court*

25.

*finds that dismissal of the enhancement would endanger public safety*. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B) *Multiple enhancements are alleged in a single case*. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) *The application of an enhancement could result in a sentence of over 20 years*. In this instance, the enhancement shall be dismissed.

"(D) *The current offense is connected to mental illness*.

"(E) *The current offense is connected to prior victimization or childhood trauma*.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded." (Italics added.)

## B.    Background

Prior to the resentencing hearing, defendant filed a memorandum seeking relief under section 1385 from the indeterminate firearm enhancement and imposition of either a 10-year or 20-year term. He also separately filed, at the trial court's request, a memorandum setting forth the two proposed sentencing options using the same format as the probation report. In these filings, defendant argued that the indeterminate

enhancement should be stricken or dismissed because it resulted in a sentence exceeding 20 years, he was only 23 years old at the time he committed the crimes, and the offenses were connected to mental illness, drug addiction, and childhood trauma. He included a statement describing a loving, caring mother, but an abusive, alcoholic father and a family life plagued by poverty, drugs, alcohol, abuse, violence, and gang activity; and he described becoming involved with drugs and alcohol between the ages of 11 and 12 years of age and an addiction to crack cocaine beginning at 15 or 16 years of age. He also stated he was sexually abused by a neighbor around the age of eight or nine, and when he was 14 years old, he lost his 13-year-old brother to cancer. Defendant argued that prior to incarceration, he did not appreciate life, either his own or that of others, but beginning in 2013, he began turning his life around and became a model prisoner. He submitted evidence that he was disciplinary free since 2013[11]; he received laudatory chronos from staff; he was recognized for his work with at-risk youth in the Juvenile Diversion Program; he had taken full responsibility for his actions and expressed his remorse; he earned his high school equivalency certificate, four Associates degrees, and other certificates of achievement; and he had multiple letters of support, had been accepted into a transitional housing program upon release and pending bed space, and had a relapse and parole plan in place.

The trial court addressed defendant's evidence and argument, recognized defendant's progress and his talent as an artist, and noted this was a challenging case. However, the court declined to strike, dismiss, or reduce the firearm enhancement.

On appeal, relying on the decision in *People v. Gonzalez*, defendant claims the trial court abused its discretion when it denied his request to strike or dismiss the 25-years-to-life firearm enhancement under section 1385 because it failed to consider

[11] The trial court, based on its observation that defendant received a counseling chrono for failing to report to work in January 2016 and renounced gang life in 2016, considered defendant's turnaround to be eight years in length.

27.

whether dismissal of the enhancement would endanger public safety. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 230–231.) He characterizes this omission as the failure to apply the correct legal standard, and he argues the court did not find dismissal would endanger public safety or explain how the reduction of the firearm enhancement to a lower term would affect public safety.

### C. Forfeiture

Defendant did not object to the trial court's ruling, otherwise advance his appellate argument in the trial court, or ask for an express ruling on the issue of public safety. Although *People v. Gonzalez* was decided one month after the resentencing in this case, the defendant in that case was resentenced in 2023, raised the issue in his sentencing memorandum, and relied on the 2018 decision in *Williams* for support. (*People v. Gonzalez*, *supra*, 103 Cal.App.5th at pp. 221–222, 225–226, citing *People v. Williams* (2018) 19 Cal.App.5th 1057.) Senate Bill No. 81 had been in effect for more than two years when the defendant was sentenced; the statute as amended expressly states, " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others" (§ 1385, subd. (c)(2)); and the defendant in *People v. Gonzalez* preserved the issue for review by raising it in 2023 (*People v. Gonzalez*, at pp. 225–226, 228–229).

Here, there are no circumstances that support excusing application of the forfeiture doctrine and defendant does not address the issue, presumably because he frames the argument as implicating the *Salazar/Gutierrez* standard based on his contention the court misunderstood the scope of its sentencing discretion. (*Salazar*, *supra*, 15 Cal.5th at pp. 424–425; *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) However, a trial court's decision whether or not to strike an enhancement under section 1385 is discretionary (*People v. Dain* (2025) 18 Cal.5th 246, 252–253), and the sentence imposed in this case was not unauthorized (*In re G.C.* (2020) 8 Cal.5th 1119, 1130 [an exception to forfeiture, "an unauthorized sentence or one in excess of jurisdiction is a sentence that 'could not

28.

lawfully be imposed under any circumstance in the particular case' "]). Further, as discussed in the context of defendant's section 1170 claims, the record does not indicate the trial court misunderstood the scope of its sentencing discretion and, therefore, the *Salazar/Gutierrez* rule does not apply. (*Ramirez*, *supra*, 10 Cal.5th at p. 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it."].)

The decision in *People v. Gonzalez* is distinguishable. In that case, the appellate court found the trial court applied an erroneous legal standard because it considered *only* whether the defendant currently posed a danger to the public. (*People v. Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230–231.) In addition, the sentence in *People v. Gonzalez* differed significantly. The defendant was serving a sentence of 75 years to life and striking or dismissing the enhancement would have reduced his sentence to 50 years to life, a still very lengthy, and possibly lifelong, sentence. (*Id.* at p. 228 ["Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence."]; see *id*. at p. 220.) Here, defendant's lengthy sentence is directly attributable to the firearm enhancement under section 12022.53, subdivision (d), and although the court did not make an express finding on public safety, it recognized the request for relief would reduce that indeterminate enhancement term to a determinate term, the options being 10 or 20 years. We are not persuaded that defendant was similarly situated to the defendant in *People v. Gonzalez* with respect to sentencing issues, and this case does not involve an express ruling demonstrating affirmative error. (*Ramirez*, *supra*, 10 Cal.5th at p. 1042.)

In sum, this case does not involve retroactive application of Senate Bill No. 81; application of a then-nascent change in the law; a record that affirmatively reflects a misunderstanding of the law, including but not limited to the scope of the trial court's sentencing discretion; or any other circumstance that warrants excusing defendant's

failure to object. Accordingly, we conclude that by failing to object, make the argument now advanced on appeal, or ask the court for a specific finding on public safety, defendant forfeited his claim of error under section 1385.[12]

## III. Entitlement to Relief from Restitution Fine Under Assembly Bill No. 1186

### A. Summary of Parties' Positions

Finally, citing *Estrada* and *Stamps*, defendant requests we strike the $200 restitution fine imposed under section 1202.4 in light of Assembly Bill No. 1186, which, effective January 1, 2025, amended section 1465.9 to provide relief from restitution fines after the passage of 10 years from the date of imposition. (See *People v. Stamps* (2020) 9 Cal.5th 685, 699; *Estrada, supra*, 63 Cal.2d at pp. 744–745.) The People reject the applicability of *Estrada* given that the statute applies to all section 1202.4 restitution fines, regardless of finality of judgment, but they argue that defendant is not entitled to have his fine vacated because it was reimposed at the resentencing hearing and 10 years have not passed since his resentencing. In response, defendant argues that even if *Estrada* does not apply, the People's interpretation fails to afford the plain language its commonsense meaning consistent with statutory intent; it violates section 1172.75,

---

[12] Defendant does not address forfeiture, as stated, and, therefore, he does not argue IAC. For the reasons discussed in the context of defendant's claim involving determinate terms under section 1170, counsel's decision not to object would not constitute IAC in any event. This case involved the heinous act of shooting an intended robbery victim in the head, leaving him comatose for a period of time (*Salgado, supra*, F058076), contrasted with evidence of significant, years-long self-betterment by defendant in prison, which was acknowledged by the trial court. Counsel could very reasonably have determined that in attempting to persuade the trial court to reduce the indeterminate enhancement term to a determinate one, thereby significantly altering defendant's prison sentence, focusing on defendant's positive, demonstrable progress in prison would be of the greatest benefit to him while drawing the court's attention to the issue of endangerment to public safety might detract from that focus. Such a rational tactical decision rests in the sound discretion of counsel. (*Strickland, supra*, 466 U.S. at p. 690; *People v. Carrasco, supra*, 59 Cal.4th at p. 985.)

subdivision (d)(2), by placing him in a worse position than if he had not qualified for resentencing; and it potentially violates the equal protection clause.

**B.      Addition of Section 1465.9 and Subsequent Amendments**

**1.      Assembly Bill No. 1869**

Section 1465.9 was added to the Penal Code on September 18, 2020, and, operative July 1, 2021 (*id.*, subd. (b); Stats. 2020, ch. 92, § 62(b)), provided, "On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated" (§ 1465.9, subd. (a); Stats. 2020, ch. 92, § 62(a)).  Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill No. 1869) provided:

"SECTION 1.  The Legislature finds and declares all of the following:

"(a) Approximately 80 percent of Californians in jail are indigent and too many enter the criminal justice system due to the criminalization of their poverty.

"(b) Incarcerated people are disproportionately Black or Latinx because these populations are overpoliced, have higher rates of convictions following an arrest, and have the highest rates of poverty.  In fact, while Black Californians represent only 7 percent of the state population, they make up 23 percent of the Californians on probation and are also grossly overrepresented in felony and misdemeanor arrests.

"(c) People exiting jail or prison face higher rates of unemployment and homelessness, due in part to racial discrimination and the impact of their criminal conviction.

"(d) The inability to meet basic needs has been found to contribute to higher rates of recidivism and is a barrier to family reunification.

"(e) According to a report by the Ella Baker Center for Human Rights, the average debt incurred for court-ordered fines and fees was roughly equal to the annual income for respondents in the survey.

"(f) A national survey of formerly incarcerated people found that families often bear the burden of fees, and that 83 percent of the people responsible for paying these costs are women.

"(g) Because these fees are often assigned to people who simply cannot afford to pay them, they make poor people, their families, and their communities poorer.

"(h) Criminal justice fees have no formal punitive or public safety function. Instead, they undermine public safety because the debt they cause can limit access to employment, housing, education, and public benefits, which creates additional barriers to successful reentry. Research also shows that criminal justice fees can push individuals into underground economies and can result in individuals turning to criminal activity or predatory lending to pay their debts.

"(i) Research shows that criminal justice fees are difficult to collect and typically cost counties almost as much or more than they end up collecting in revenue.

"(j) The use of criminal justice fees has been argued by some to be unconstitutional. On February 20, 2019, the United States Supreme Court ruled unanimously in *Timbs v. Indiana* [(2019) 586 U.S. 146] that the Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable to the states and 'protects people against abuses of government's punitive or criminal-law-enforcement authority.' Justice Ginsburg wrote in her decision that the constitutional protection against excessive fines is 'fundamental to our scheme of ordered liberty with deep roots in our history and tradition.' " (Assem. Bill No. 1869; Stats. 2020, ch. 92, § 1.)

## 2. Assembly Bill No. 177

Effective September 23, 2021, section 1465.9 was amended both to add section 1463.07 to subdivision (a) (see Stats. 2021, ch. 257, § 35(a)) and to change subdivision (b) to expand relief, as follows: "On and after January 1, 2022 the balance of any court-imposed costs pursuant to Section 1001.15, 1001.16, 1001.90, 1202.4, 1203.1, 1203.1ab, 1203.1c, 1203.1m, 1203.4a, 1203.9, 1205, 1214.5, 2085.5, 2085.6, or 2085.7, as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Assem. Bill No. 177

(2021–2022 Reg. Sess.) (Assembly Bill No. 177); Stats. 2021, ch. 257, § 35(b).)[13]  The

bill included virtually identical findings and declarations in section 1 of Assembly Bill

No. 1869 (see Stats. 2020, ch. 92, § 1), with the addition of the following:

> "(k) The COVID–19 global pandemic and resulting explosion in unemployment and economic downturn has further exposed the racialized economic and health structures of our country.  The same Black and Latinx communities that face overpolicing and higher rates of fees have been disproportionately impacted by the virus and by the subsequent economic impacts.  Incarcerated people, mostly Black and Latinx, caged in unsafe conditions, face explosive rates of viral infection.  As communities face increased health costs and dramatic unemployment caused by COVID–19, the pain of these fees is higher than ever before.

> "(*l*) Recognizing the racial and economic harms of criminal administrative fees, in September 2020, the Legislature passed [Assembly Bill No.] 1869 through the budget, which eliminated 23 of California's most harmful criminal administrative fees."  (Assem. Bill No. 177; Stats. 2021, ch. 257, § 1(k)–(*l*).)

### 3.      Assembly Bill No. 199

Effective June 30, 2022, section 1465.9 was amended to add subdivision (c),

which provides, "On and after July 1, 2022, the balance of any court-imposed civil

assessments pursuant to Section 1214.1 imposed prior to that date shall be unenforceable

and uncollectible and any portion of a judgment imposing those assessments shall be

vacated."  (Assem. Bill No. 199 (2021–2022 Reg. Sess.) (Assembly Bill No. 199);

Stats. 2022, ch. 57, § 21.)[14]

---

[13] Assembly Bill No. 177 also repealed section 1463.07.  (Stats. 2021, ch. 257, § 34.)

[14] Subsequently, Assembly Bill No. 1754 (2023–2024 Reg. Sess.), effective January 1, 2024, made a minor technical change to section 1465.9 as part of a routine code maintenance bill.

### 4. Assembly Bill No. 1186

Finally, at issue in this appeal, section 1465.9 was amended to add subdivision (d), effective January 1, 2025, which provides, "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." (Assem. Bill No. 1186; Stats. 2024, ch. 805, § 1.)

### C. Analysis

Section 1465.9 as added by Assembly Bill No. 1869 was interpreted by the Court of Appeal in *People v. Greeley* (2021) 70 Cal.App.5th 609 (*Greeley*), which concluded, "[W]e need not apply the presumption of retroactivity (see *In re Estrada* (1965) 63 Cal.2d 740), because by its plain terms the ameliorative changes of Assembly Bill [No.] 1869 apply retroactively to make any unpaid portion of the identified assessments, as they existed on June 30, 2021, 'unenforceable and uncollectible' as of July 1, 2021. (Stats. 2020, ch. 92, §§ 11, 62.) In addition to making any unpaid portion of the identified assessments void by operation of law, however, the plain language of Government Code section 6111 and Penal Code section 1465.9 not only authorizes, but mandates, vacation of a portion of a judgment for the purpose of striking the now-unauthorized assessments—here, the unpaid balance of the probation supervision and criminal justice administration fees. Specifically, after declaring that the identified fees are now 'unenforceable and uncollectible,' the relevant statutes then state, '*and* any portion of a judgment imposing those costs *shall be vacated*.' (Gov. Code, § 6111, subd. (a), italics added; Pen. Code, § 1465.9, subd. (a), italics added.) Significantly, '[t]he Legislature also used the conjunctive "and" which must be given effect under traditional statutory interpretation rules.' (*In re Carr* (1998) 65 Cal.App.4th 1525, 1536.) Thus, although the unpaid balance of the identified fees is no longer enforceable and collectible, the statute *also* mandates that any portion of a judgment imposing those fees be vacated. Accordingly, based on the plain language of the statute, the unpaid balance of the

34.

probation supervision and criminal justice administration fees must be vacated." (*Id.* at pp. 626–627, fns. omitted; accord, *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 953 [interpreting Gov. Code, § 6111, added by Assem. Bill No. 1869].)

Subsequently, the Legislature expanded relief under section 1465.9 by bringing additional statutes within its reach through the enactment of Assembly Bills Nos. 177 and 199. Most recently, the Legislature extended relief under the statute to restitution fines imposed under section 1202.4 through the enactment of Assembly Bill No. 1186. In all three bills, the Legislature employed the same language it had in Assembly Bill No. 1869: the balance of specified court-imposed costs, civil assessments under section 1214.1, or restitution fines under section 1202.4 "shall be unenforceable and uncollectible and any portion of a judgment imposing those [costs, assessments, or] fines shall be vacated." (§ 1465.9, subds. (b)–(d).)

The People do not dispute the foregoing, but they argue defendant is not entitled to any relief because the restitution fine was reimposed in May 2024 when he was resentenced and, therefore, the 10-year period has not yet expired. However, in arguing the 10-year clock on relief under section 1465.9, subdivision (d), resets at resentencing, the People do not identify any legal authority or develop any substantive reasoning supporting the proposition that a component of a defendant's punishment starts over at resentencing. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, ' "the court may treat it as waived, and pass it without consideration." ' "].) Further, although they acknowledge that restitution fines are punishment (*People v. Hanson* (2000) 23 Cal.4th 355, 357; accord, *People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1048, fn. 3), they do not attempt to reconcile their view with section 1172.75, subdivisions (d)(1) and (2),[15] or the legislative history of

_____

[15] As previously set forth, those provisions are as follows: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as

35.

Assembly Bill No. 1186. They also do not address the potential for constitutional conflict. (See, e.g., *People v. Williams* (2024) 17 Cal.5th 99, 133 ["equal protection inquiry asks whether there is a rational basis for the Legislature to treat certain individuals differently when prescribing the consequences under an ameliorative statute"]; *Hanson*, at pp. 357, 366 [The *Henderson* rule precludes the imposition of more severe punishment on resentencing; "the chilling effect on the right to appeal generated by the risk of a more severe punishment that lies at its core."], citing *People v. Henderson* (1963) 60 Cal.2d 482, 495–497.)

Had the Legislature intended to limit retroactivity in the manner the People argue, it knew how to do so. (See, e.g., § 1385, subd. (c)(7) ["This subdivision shall apply to all sentencings occurring *after* January 1, 2022." (italics added)].) However, the plain language of the statute does not support their interpretation and the result they advocate for is in tension with clearly expressed legislative intent to eliminate fees and fines that deepen the poverty cycle for offenders without meeting the financial needs of crime survivors. (See Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1186 (2023–2024 Reg. Sess.) July 2, 2024, p. 6.) The focus of Assembly Bill No. 1186 was elimination of juvenile restitution fines, but the Legislature included the elimination of outstanding restitution fines for juveniles and adults after 10 years. The bill's author explained, "California's youth restitution system is not working. Many victims/survivors receive little, if any, compensation due to the burdensome eligibility and administrative obstacles and because the State Restitution Fund is largely dependent on the collection of fines and

---

a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed" (§ 1172.75, subd. (d)(1)) and, "The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id.*, subd. (d)(2)).

fees from people unable to pay them. *California has already taken meaningful steps toward reducing harm in the restitution system.* Assembly Bill [No.] 177 eliminated collection fees for restitution and restitution fines ordered against adults, as well as interest on restitution when imposed as a condition of probation. *However, numerous features of the system still in place compound the collateral consequences of an adjudication or conviction, exacerbate the cycle of poverty, and further criminalize Black and brown youth and families.*" (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1186, *supra*, July 2, 2024, p. 4, italics added, fns. omitted.) "This bill prospectively eliminates the requirement that a juvenile court order a minor adjudged a ward of the court to pay a restitution fine. Additionally, the bill makes the outstanding balance of any restitution fines for both juveniles and adults unenforceable and uncollectible 10 years after the imposition of the fine. According to the supporters of this bill, restitution fines deepens poverty for minors and their families and does not meet the financial needs of crime survivors." (*Id*. at p. 6.)

We find the People's position untethered from the plain language of the statute and the underlying legislative intent, and in advancing the proposition that the restitution fine was "reimposed" at the resentencing hearing such that the clock affording defendant ameliorative relief from a component of his punishment restarted, they fail to elucidate the point or acknowledge any of the issues such an interpretation necessarily implicates. Therefore, we give effect to the plain language of subdivision (d) of section 1465.9 providing that any portion of a judgment imposing a restitution fine under section 1202.4 shall be vacated 10 years after imposition. In this case, the restitution fine was imposed in 2009 when defendant was sentenced, and he is entitled to vacatur of the portion of the judgment imposing that fine. (*Greeley*, *supra*, 70 Cal.App.5th at pp. 626–627.)

## **DISPOSITION**

The portion of defendant's judgment imposing a $200 restitution fine under section 1202.4 is vacated in light of section 1465.9, subdivision (d), added by Assembly Bill No. 1186.  The judgment is otherwise affirmed.

                                                          PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

38.